We'll hear the next case, Osborn v. Williams. Thank you, Judge — excuse me, thank you, Judge Chen. May it please the Court, Charles Dewey Cole, Jr., for the appellant, Earl Osborn. The issue in this case neatly stated is whether the defendants, Connecticut corrections officers, made out their affirmative defense on Osborn's supposed failure to comply with the administrative grievance scheme when the defendants, the corrections officers, did not come forward in the district court with any evidence that they had assisted Osborn with complying with the grievance scheme. The Connecticut — Where was it required that he receive such assistance? It is in the grievance rule. Doesn't he have to ask for it? That's not what it says, Your Honor, and that's the unique thing about it. It says special provision shall be made to ensure access for the impaired or disabled. It doesn't say on request, and it doesn't say some other sort of condition. I've tried to think how does this fit in. It struck me — And it says special provision shall receive assistance upon request in the inmate administrative remedies process. That's right. That's the next sentence, Your Honor. And I suggest — On request. On request. Right. But I see — We can stipulate there was no request here. Of course. But I submit, Your Honor, that that is a separate procedure and that the controlling rule is, in fact, the sentence above that, which says that you must do this without a request. Yes, if you have a request, then you have to do it, too. But in this case — What would be the point of the second sentence if the first sentence means what you say? The point of the second sentence would be a case, for example, where the State would not be on notice of an inmate's disability, for example. Now, keep in mind in this case, Osborne, who had, of course, lived behind bars for I think some 24 years now, had a history of psychiatric problems, was diagnosed as a schizophrenic. Following the event here, when he was taken to the — I think it was an R.H.U. or S.H.U. in Connecticut, he was referred for psychiatric help. So in this case, you don't need the request because the corrections officers should know on their own or be imputed to them that, you know, this is one of those situations where you have to ask. It all depends on a complex of decisions within the medical side of the prison as to whether he's able or not able and, you know, are they supposed to do an investigation of every prisoner's mental health? No. I'm not suggesting that for a moment. But when you have someone who is beaten up, taken to the R.H.U., put — given a psychiatric referral, someone who has had a history of psychiatric illnesses, the sensible thing in that case is to say, all right, well, let's find out if there's a problem here because, you know, maybe he has a grievance, and considering the facts that he had set out where he had asked to have his cell changed, it got no response and ended up getting beaten up by his cellmate, you know, maybe you ought to ask, particularly when you should be unnoticed. I mean, that's the only way you can read the two of them. You should try to harmonize them. The record has his medical records in it. Yes. Don't they show that prior to — up until at least November 13th, if not beyond, that he was doing fine? He said he was good, he was calm, he denied hearing voices, he was alert, oriented, without acute symptoms, not hallucinating. Well, that's one part of what's in there. But you also have a situation in which he then gets referred for psychiatric help. He testifies himself to being — When was he? What? Was that later? When was that? That was also within that 30-day period. And I might drop a footnote here, Judge Chin, because one of the things that's particularly difficult for Osborne here is that we can't even think of this as a 30-day period because, if you remember, with the two-step scheme in Connecticut where he has to do not only informal grievance but then submit a grievance and allow, I believe it's 15 working days for a response and then do everything in terms of final grievance within 30 calendar days. The reality in Osborne's case is he has 8 days to get the procedure going. But during those 8 days — Yes. The procedure was available. Of course it was. He had 8 days. Why isn't that the short answer based upon Ross, the case of the Supreme Court case? Well, because the question in all these cases comes down to whether it's available not in a — not in an objective sense that, yes, there's an 8-day period, you can do it, but whether it's available to him. Well, if he were in a coma, yes, I can understand. But if he were so dysfunctional that it was impossible for him to do it. But that's not what the record is here. Well, that's the easy case, Your Honor. And the problem is that this case is not the easy case. It falls in the middle. It's where you have evidence that he is in a position where he's unable to do it, and then the 8-day period goes by. And I should say, if you go back to the Supreme Court's decision — But how based upon what our presiding judge has just said can we reach from the record that he was unable to do it based upon his mental condition? And the record is to the contrary. Well, the question is not so much whether it's what the record is. It's what — We usually go upon the record. Well, I didn't mean it in that way. I meant whether there was a genuine issue based on the record. You're reading it one way and saying there's no genuine issue. But from his perspective, you have him — What evidence is there to show that he was suffering from a mental illness that precluded him from filing a grievance by November 13th or 12th? Right. Well, as I'm saying, it's the evidence that he was referred for a psychological evaluation, which is A585. He asked to go to the mental health unit, A379. You have — What does that have to do with being able to file a grievance? The fact that you went to a mental health unit means you can't file a grievance? Well, his point was that he was — he said — his own testimony was he was in pain, he was disoriented, he was hallucinating, and he said — he said, I was, quote, too disoriented to file a grievance. That's his testimony. Now, that should make — not that Judge Walker is wrong that he might not lose, but that that should make at least a genuine issue a fact to be determined by the district court and thus preclude summary judgment. I might say also, Your Honor, that there was, for want of a better word, some rather loose language in the district court opinion about the necessity of expert witness proof, and I don't know if that caught anyone's attention, but you wouldn't really need expert witness proof, although you would need — if you're going to show that someone is, in fact, having a problem, you'd have to be able to bring in the records themselves that would show that. You gave us a record site just a moment ago. Was it 585, did you say? 585, Nurse Refers Osborne for Psychological Evaluation, and then 265, Chart of Osborne Psychiatric Care After the Incident. And then there was his own evidence, his own deposition testimony, which is basically A140 through about A155. And there are a number of things in there, including his own statement that he was, quote, too disoriented to file a grievance, unquote. All right.  Thank you, Your Honor. We have some time for a follow-up. Good morning, Your Honors. May it please the Court. Stephen Finucane, Assistant Attorney General, State of Connecticut, for the Defendant Appellees. We respectfully request that Your Honors affirm the well-reasoned decision of the district court. The district court correctly decided the issues before it based upon the record before it, and that is what's important here today, is the record that was before the district court. And that record demonstrates time and again that Mr. Osborne had the ability, in fact, and subjectively or objectively, however you look at it, to take advantage of the grievance process within the relevant 30-day period. Based on the facts of this particular case? Based on the facts of this particular case. So you're not holding, you're not urging now that there could never be a mental health reason for upholding a plaintiff in this situation? Yeah. We're not taking that position, Your Honor. We don't believe this case even needs to get into that to resolve this case. Yes. So I think it's the Galbraith case that we decided, which is a non-precedential case, Galbraith against Washington. I'm familiar with that, Your Honor. It's similar to this case, is it? Absolutely, Your Honor. It's cited in the amicus' brief on page 23. That decision is strikingly similar to this case in a number of reasons. Some of the symptoms are similar, hallucinations. There I believe there was PTSD also in that case. But there was numerous instances of symptoms severe or not severe of a mental illness there in the time period where the exhaustion needed to occur. There was also a concession in that case that there was he didn't actually file the grievance. And there, what this Court determined is this demonstrates a long-term established history of an illness. It does not demonstrate that he is preventing, I believe the actual words, so severe that the plaintiff was prevented from generally functioning. So really what I think the easiest way to boil this case down is there is no genuine dispute of material fact that Mr. Osborne was somehow unable to exhaust at every moment in the 30-day period. That's really the disputed fact that they would need to raise. And there's nothing in the record to suggest that. Scalia. Just out of curiosity, it's not really directly relevant to this decision. But for the first 15 days, he couldn't exercise it, correct? He couldn't file his grievance. He has to wait until the informal procedure is complete. Not necessarily, Your Honor. So there is a little bit of confusion about the directive here. And the — all the arguments about the 8-day period and Veterans Day and Columbus Day are really red herrings because of how the directive actually works. The directive requires attempts in formal resolution. You may attempt verbally, not necessarily that you have to. And if you're dissatisfied with whatever attempts you've made, you can file the 9601 inmate request that's been mentioned. When you file that, DOC is responsible in 15 business days. However, the 30-day period to file the level 1 grievance, the 9602 form, is a 30-day hard deadline. But it's — the directive is actually very clear. If for some reason, some good reason, you do not get a response or you do not have the ability to attach the 9601 form to your level 1 grievance, you just say so. You just say why in your grievance. And the actual language in the directive, and this is right out of Section 6c, is if you haven't gotten the response back or some valid — similar valid reason. Here, if for some reason he did not have the ability and he could demonstrate that or he could represent that, hey, look, I didn't file this because I was having a serious problem. I just got beaten up. I didn't get a response back yet or I just filed it or I didn't file it. He could write that right on his grievance and file the grievance. The directive specifically allows for those types of provisions. So the — the limiting or the shrinking of the 30-day window is just not an accurate representation of the directive. Also, there was some discussion. I think Your Honors did zero right in on it. But just to be very clear, the directive does provide any number of — or requires accommodations be made from inmates who request it. There does need to be a request. The whole point — I think it's important to look here from the PLRA — the whole reason that these cases that evaluate the requirement of the PLRA for exhaustion is to put DOC on notice. So the idea that DOC wouldn't be scouring the cell blocks, making sure anyone who might have had a problem knows that they can have accommodation, actually flies in the face of the PLRA and turns all the case law on its head. Just simple request and you can have assistance for an impairment or accommodation. So the decision that's been cited in the briefing with the inmate who had no hands in Connecticut, if he had no hands, he could say, I need help typing this, and they would help him type it. And I would also mention here, some of the facts in this case are not just that it could have been available to him. It shows that it was — it was not — he knew how to use this process, and he actually wrote notes about it. There's a citation in the record. The date is 10-29-13. So not right after the incident and not right up on the deadline here, there's a nurse's note that he was speaking to Mr. Osborne. And Mr. Osborne was reading off notes that he had brought with him to that encounter that referenced the incident with the cellmate. So he was able to write notes about this, but he wasn't able to fill out a worksheet and put it in a mailbox. That's really the argument that's being made. He had also filed a grievance some months earlier? He had an unrelated one, yes, Your Honor. Right. But he knew how to use the process. Absolutely. How much earlier was that? That is escaping me, Your Honor. I apologize. I believe it was several months, maybe four or five months. I think it's even in the record. It's about the FedEx property dispute that actually was attempted to be brought in this case. All right. And then, Your Honor, also in the record there is the entries in the November periods as well where he's saying he's okay, he's saying that he's adjusting well to his new housing unit. The notes reference that he's exercising regularly at rec, he's taking his meals. He's actually distinguishing sufficiently between medications. There's one medication he's saying he doesn't want. The rest of them he's taking and he's complying with. He's making cogent decisions on a regular basis. And to touch upon Judge Walker's question about Galberth, I would ask that Your Honors look to the district court decision there as well. It goes into even more detail about the fact that this person is not so entirely incapable of functioning at every moment that they can't use it. And there I believe the words are, not severe enough that the process is unavailable at every moment. So that would need to be the dispute of fact they would raise. They would need to be able to raise a dispute of fact that somehow Mr. Osborne was unavailable at every moment to use this process. I welcome any further questions. Otherwise, I don't believe I have anything additional. Thank you. We'll hear the rebuttal. Thank you. Thank you, Judge Tind. It's not, Your Honors, a matter of scouring the prison or scouring to find out what happened, because after all, this is an incident that happens when he asked to have his ---- How would they know that an inmate wanted to file a grievance or was interested in filing a grievance if there wasn't any kind of a request? Well, he had requested to change his cell. He got beat up. They went to the cell. They assumed that he wants to file a grievance. Well, considering what had happened, you say to yourself, do you think this might be one in which I'll get a grievance where someone asks to have his cell changed? He doesn't get changed. He gets beaten up. He gets taken to the R.H.U. I mean, you have to assume. My position is a little different. We've got to think about future cases and precedent of the legal landscape here. The rule you're asking for is unadministrable. Well, actually, Your Honor, that's why ---- Is there a rule that you're asking for? That's why, Your Honor, I tried to put it on the ---- using the rule as it's written to say, special provisions shall be made to ensure access for those who are impaired. And because that's Connecticut's own language, say, all Connecticut has to do is say, we made an effort to do this. And if they don't like the rule, they can change it. I'm not ---- because I appreciate narrow ground, absolutely. Not broad. Absolutely right. And that's why the Court can keep it to exactly what's in the rule, the rule Connecticut wrote for itself, and do that in a way so that if Connecticut finds that that doesn't work, it can change it. And in that way, it's a very, very narrow ground. It doesn't even have to be a presidential opinion, as you would say. The other point, let me make ---- One-line order would do the trick for you. Exactly, Your Honor. I'll take a one-liner, a summary reversal one-liner. But the other point I want to make in the one second that's left is, if you go back and look at paragraph 6, while Mr. Finucane does talk about 30 calendar days, you've got to keep in mind that it's ---- you've got to offset that by 15 working days. It's not the same, and it comes down to about a one-week period. That's shorter than the Supreme Court upheld in Woodford, where Justice Stevens dissented over a 15-day period. So it's getting really close to the bottom. Thank you. We'll reserve decision.